UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TOM HEANEY                                                    CIVIL ACTION

VERSUS                                                         NO: 14-2104

CHRISTOPHER L. ROBERTS, ET AL.                SECTION: "A" (2)

**ORDER AND REASONS**

The following motions are before the Court: **Motion for Summary Judgment (Rec. Doc. 37)** filed by defendants Christopher L. Roberts and the Parish of Jefferson; **Motion for Summary Judgment (Rec. Doc. 36)** filed by defendants Ronald Black and the City of Gretna. Plaintiff Tom Heaney opposes the motions. The motions, noticed for submission on August 12, 2015, are before the Court on the briefs without oral argument.[1] For the reasons that follow, both motions are GRANTED IN PART AND DENIED IN PART.

**I.    BACKGROUND**

Plaintiff Tom Heaney has filed this complaint pursuant to 42 U.S.C. § 1983 and state law. Heaney contends that the defendants violated his constitutional rights during a Jefferson Parish Council meeting. The defendants are Councilman Christopher L. Roberts, the Parish of Jefferson, Gretna police officer Ronald Black, and the City of Gretna.

Heaney alleges that he attended the regularly scheduled Jefferson Parish Council meeting on September 18, 2013, which was held in Gretna, Louisiana. (Rec. Doc. 1, Complaint ¶ 3). Heaney was registered to speak that night during the time allotted for public comment. Roberts was presiding as chair of the meeting. Per council rules, Heaney was

---

[1] Roberts and Jefferson Parish have requested oral argument but the Court is not persuaded that oral argument would be helpful.

1

allotted five minutes to speak. (*Id.* at 3). Heaney expressed his opinion on the legality of certain campaign contributions by no-bid contractors and he contends that having used only three minutes of his time, Roberts asked him to yield the floor so that the Parish Attorney could opine on the issue. (Complaint ¶¶ 6-7). Heaney asked that he be allowed the full balance of his remaining time allotment, and Roberts confirmed that he would receive it. (*Id.*).

When Heaney began speaking again he challenged the Parish Attorney's legal opinion, which he contends was done in a "calm" voice, using no inappropriate language. (Complaint ¶ 8). Heaney alleges that it was at this point that Roberts "rudely" interrupted him, and mischaracterized his "polite" disagreement as "berrating" the parish attorney. (*Id.*). Roberts then had defendant Ronald Black, a police officer with the City of Gretna, remove Heaney from the council chambers. (*Id.*). Heaney contends that Black shoved him to the floor and then fell on top of him before forcibly removing him from the building. (*Id.* ¶ 10).

Heaney filed the instant complaint on September 12, 2014. Heaney contends that Roberts and Black prevented him from exercising his First Amendment rights, and violated his Fourth Amendment rights by unlawfully seizing him. (Complaint ¶ 12). Heaney seeks damages and attorney's fees pursuant to 42 U.S.C. §§ 1983 and 1988, and punitive damages. Original jurisdiction is therefore grounded on 28 U.S.C. § 1331 (federal question).

Heaney also asserts claims under state law against Roberts and Black. Both defendants are sued for violations of the Louisiana Constitution, Article I, § 7. Heaney alleges that Black is also liable in tort. (Complaint ¶ 12). For these state law claims, Heaney joined Jefferson Parish and the City of Gretna, alleged to be the employers of Roberts and Black, respectively. (*Id.* ¶ 2). Heaney contends that Jefferson Parish is vicariously liable for the conduct of Roberts and that the City of Gretna is vicariously liable for the conduct of Black.

(*Id.* 14).

All defendants now move for summary judgment on Heaney's claims.

## II. DISCUSSION

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (*citing Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (*citing Anderson*, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (*citing* Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (*citing SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

### A.   First Amendment/State Constitution Claims[2]

Roberts argues that he did not violate Heaney's First Amendment right to free speech because the council meeting was a limited public forum which gives a moderator in Roberts' position the discretion to place reasonable, viewpoint-neutral restrictions on speech. According to Roberts, he only restricted Heaney's speech and removed him from the meeting when his speech became repetitive, disruptive, and hostile. Thus, according to Roberts, Heaney cannot establish that he suffered a First Amendment violation. Roberts argues that if he did violate Heaney's First Amendment rights, he is entitled to qualified immunity. Roberts' contention with respect to qualified immunity is that his actions were objectively reasonable, and that on September 18, 2013, the law was not clearly established such that the actions he took constituted a First Amendment violation.

Heaney does not dispute Roberts' contention that the parish council meeting was a limited public forum, and as such Roberts, as chair of the meeting, could impose reasonable and viewpoint-neutral restrictions on the public speakers. But Heaney contends that Roberts cut him off and prevented him from speaking because he attempted to rebut the legal opinion given by the parish attorney, and to opine that parish council members were violating federal law by accepting campaign contributions from no-bid contractors. Heaney posits that the

---

[2] The parties agree that separate determinations of Plaintiff's federal and state free speech claims are unnecessary because federal standards apply to the state claims. (Rec. Doc. 37-1, Roberts' Memo in Support at 5); (Rec. Doc. 41, Heaney's Opposition at 7 n.12). *But see State v. Schirmer*, 646 So. 2d 890, 904-05 (La. 1994) (Dennis, J., concurring) (suggesting that the protections of Article I, § 7 of the state constitution are arguably broader than those under the First Amendment). Although the parties did not expressly mention the qualified immunity defense when noting that federal standards will apply to the claims under the state constitution, this Court's *Erie* determination is that the Louisiana Supreme Court would recognize the same qualified immunity defense for claims under Article I, § 7 of the state constitution that the federal courts recognize for § 1983 First Amendment claims. *See Moresi v. State Dep't of Wildlife & Fisheries*, 567 So. 2d 1081, 1094 (La. 1990) (holding that the same qualified immunity defense available under § 1983 applies to a claim under Article I, § 5 of the Louisiana State Constitution). Unless otherwise stated, references to "the First Amendment claim" refer to the federal and state freedom of speech claims collectively.

restrictions that Roberts put on his speech were clearly content-based because Roberts was trying to silence Heaney's message, and that Roberts' attempt to justify his actions by characterizing Heaney as hostile or disruptive is merely pretextual.

Public bodies may confine their meetings to specified subject matter and may hold nonpublic sessions to transact business. *Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 759 (5th Cir. 2010) (quoting *City of Madison Joint Sch. Dist. v. Wisconsin Employ. Relations Comm'n,* 429 U.S. 167, 175 n.8 (1976)). A city council meeting is *generally* recognized to be a "limited public forum," which means that the government does not have to allow persons to engage in every type of speech. *Id.* (quoting *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98 (2001)). In limited public forums, the government may impose reasonable, viewpoint-neutral restrictions on speech to preserve "the civility and decorum" necessary to further the purpose of the meeting. *Ream v. City of Heath*, No. 14-4338, 2015 WL 4393307, at *3 (N.D. Tex. July 16, 2015) (quoting *Wenthold v. City of Farmers Branch*, No. 11-748, 2012 WL 467325, at *7 (N.D. Tex. Feb. 14, 2012)). Therefore, consistent with the First Amendment, the governing body may restrict speakers to the subject at hand, impose time limits on speakers, and prevent disruptions of the meeting. *Wenthold*, 2012 WL 467325, at *8 (citing *Steinburg v. Chesterfield County Plan. Comm'n*, 527 F.3d 377, 385 (4th Cir. 2008)). The government cannot under any circumstances, however, restrict speech based on viewpoint, and even viewpoint-neutral restrictions must be reasonable in light of the forum's purpose. *Fairchild*, 697 F.3d at 760. The determination of whether any restrictions on speech were viewpoint-based turns upon the facts of each case.[3] *Wenthold*, 2012 WL 467325, at *8 (citing *Content*

---

[3] The Court recognizes that a parish council meeting like the one at issue in this case is not *ipso facto* a limited public forum. *See Fairchild*, 597 F.3d at 759 n.42. Because the government is free to conduct a public meeting without any restrictions on the speakers, a council meeting can conceivably be a "designated public forum," which affords speakers even greater protections under the First Amendment. In this case, the parties do not dispute that the September 18, 2013 meeting was a limited public forum, and both the parish ordinances covering

*and Viewpoint Discrimination: Malleable Terms Beget Malleable Doctrine*, 13 Comm. L. & Pol'y 131, 180 (2008)).

At the outset, the Court notes that there are no *ostensible* factual disputes regarding Heaney's and Roberts' conduct pertaining to the First Amendment claim because Defendants have provided the Court with the video (including audio) of the September 18, 2013 council meeting. That video clearly presents the exchange between Roberts and Heaney that culminated in Heaney's expulsion from the council meeting. The video is consistent for the most part with the factual allegations in Heaney's complaint. As the Court explained when it denied Roberts' Rule 12(b)(6) motion to dismiss, if Roberts acted because of the content of Heaney's speech as opposed to Heaney's allegedly disruptive conduct then Heaney's rights were violated. (Rec. Doc. 24, Ruling on Roberts' MTD at 4).

Roberts' contention that summary judgment is appropriate because Heaney's First Amendment rights were not violated as a matter of law turns on the same contention that Roberts' counsel made in support of the motion to dismiss, *i.e.*, that Roberts acted not because of the content of Heaney's speech or his viewpoint but because Heaney was disrupting the meeting and "berrating" the parish attorney—in other words, that Roberts' actions constituted viewpoint-neutral restrictions. But what defense counsel's argument fails to recognize is that the pivotal question with respect to the First Amendment claim is one of Roberts' motive or intent in silencing and ejecting Heaney. If Roberts acted because of Heaney's viewpoint as opposed to his conduct, then Heaney suffered a First Amendment violation. Thus, improper motive is an element of Heaney's First Amendment claim. Subjective questions of motive or intent are issues of fact that are jury determinations not

---

council meetings and the video of the meeting itself confirm that designation. (Rec. Docs. 37-2 & 37-4, Exhibits 1 & 3). Because the parish council meeting was a limited public forum as opposed to a designated public forum, Roberts could, consistent with the First Amendment, place reasonable, viewpoint-neutral restrictions on the speakers.

resolvable on summary judgment.

Defense counsel's position fails because in order to adopt it, the Court would have to resolve the subjective question of intent in his favor based on the video evidence. But the video evidence in this case does not resolve the factual dispute regarding Roberts' subjective intent. It is obvious from the video that Heaney was confrontational and argumentative in the exchange with Roberts. On the video Roberts characterized Heaney as being "hostile." But Heaney's conduct was not so disruptive that this Court could properly decide as a matter of law that Roberts' actions were not motivated, even if in part, by Heaney's message. For example, it is not beyond dispute that an attempt to express disagreement with the parish attorney would be "berrating" her given that Heaney's remarks did not suggest any type of ad hominem attack.[4] Heaney did interrupt Roberts while he was trying to speak but Heaney was never warned that he would be ejected from the public meeting as a sanction if he continued

---

[4] At this juncture the Court finds it appropriate to point out a distinction in the First Amendment jurisprudence that neither party has addressed: the distinction between a content-based restriction on speech and a viewpoint-based restriction on speech. Viewpoint-based restrictions on speech are *per se* violative of the First Amendment. Content-based restrictions can, however, under some circumstances qualify as valid time, place, and manner restrictions on speech, particularly in a limited public forum like the council meeting. *See, e.g., Jones v. Town of Quartzsite*, No. 12-1383, 2014 WL 4771851 (D. Ariz. Sept. 24, 2014) (citing *Norse v. City of Santa Cruz*, 629 F.3d 966, 975 (9th Cir. 2010). For instance, if Heaney had wanted to address the council about parking meters in Orleans Parish, Roberts could have validly prohibited him from doing so because such a topic would be wholly off-subject and beyond the scope of the Jefferson Parish Council's business and control. A content-based restriction of this nature surely could pass muster under the appropriate level of scrutiny. And assuming that all other speakers were likewise prohibited from speaking about parking meters in Orleans Parish, the restriction would not be viewpoint-based. *See Tex. Div., Sons of Confed. Vets., Inc. v. Vandergriff*, 759 F.3d 388, 397 (5th Cir. 2014) (discussing the distinction between content-based and viewpoint-based restrictions), *reversed on other grounds, Walker v. Tex. Div., Sons of Confed. Vets., Inc.*, 135 S. Ct. 2239 (2015); *Monteiro v. City of Elizabeth*, 436 F.3d 397, 407 (3d Cir. 2006) (Fisher, J., dissenting).

When the Court encountered this distinction in the law during the course of its own research the Court was reminded that on the video Roberts tried to explain to Heaney that a parish council meeting was not the proper venue for challenging the legal opinions of the parish attorney, and that if Heaney wanted to do so, he could go downstairs to the clerk's office and file a lawsuit. (Rec. Doc. 37-2, Exhibits 1). The Court is not suggesting that such an argument would have carried the day for Roberts had he raised it but there might be some validity to it.

to interrupt. The video does not suggest that Heaney's conduct was inciting disorder among the other attendees at the meeting or that public safety was becoming an issue. Black testified that the exchange between Heaney and Roberts had not caught his attention prior to Roberts instructing Black to remove Heaney. (Rec. Doc. 36-3, Exhibit C Black depo at 25-26). And the video demonstrates that the most "hostile" or disruptive part of the exchange between Heaney and Roberts occurred *after* Roberts had already silenced Heaney and ordered him removed from the meeting. Although the Court can envision a situation where video evidence might establish that the plaintiff's conduct was so disruptive or egregiously inappropriate so as to leave no fact question that truncation of speech and ejection from a meeting were appropriate, this is not such a case.[5] In this case, particularly in light of the somewhat unpalatable subject matter that Heaney was attempting to discuss, *i.e.*, that council members were violating federal law, a jury could reasonably infer that Roberts silenced Heaney and removed him from the meeting because of the content of his speech as opposed to a need to maintain order at the meeting.[6] In the end the question becomes one of Roberts' credibility in

---

[5] The Court is not necessarily suggesting that the question of *subjective* intent can be resolved on summary judgment when video evidence depicts particularly egregious behavior by the plaintiff. But at times, the plaintiff's conduct might be so *objectively* obstreperous and disruptive so as to allow a court to credit a defendant's contention on summary judgment that regardless of unconstitutional motive, the defendant would have taken the same actions anyway. *See Monteiro v. City of Elizabeth*, 436 F.3d 397, 408 (3d Cir. 2006) (Fisher, J., dissenting). In *Crawford, infra*, note 9, the Supreme Court referred to this as "causation." 523 U.S. at 593. Even if the plaintiff establishes that improper motive played a role in the defendant's conduct, the defendant might nonetheless prevail by showing that he would have taken the same actions in light of the plaintiff's conduct. *Id.* In this case, Roberts does not make such an argument, and even if he had, he could not prevail on summary judgment because the Court is not persuaded that Heaney's conduct was objectively offensive enough to support such an argument as a matter of law. The argument could be persuasive to a jury.

[6] The Court clarifies that it in no way is suggesting that Heaney's conduct was insufficient as a matter of law to support the actions that Roberts took if those actions were not actuated by an improper motive. The Court stresses that the proper inference to be drawn from the evidence, regardless of in whose favor it is drawn, is a question of fact to be resolved by the jury.

explaining his reasons for the actions that he took.[7] Even though this Court, upon viewing the video, could understand why Roberts did what he did, it is the sole province of the jury to judge a party's credibility.[8] For these reasons, Defendants are not entitled to summary judgment based on the contention that Heaney's First Amendment rights were not violated as a matter of law.

That said, Roberts contends that he is entitled to qualified immunity on the First Amendment claim. As a general rule, government officials acting within their discretionary authority are immune from civil damages if their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known. *Hernandez v. Tex. Dept. of Prot. & Reg. Servs*, 380 F.2d 872, 879 (5th Cir. 2004) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The qualified immunity analysis is a two-step inquiry. First, a court must decide whether a plaintiff's allegation, if true, establishes a violation of a clearly established constitutional right. *Wyatt v. Fletcher*, 718 F.3d 496, 502 (5th Cir. 2013)

---

[7] Defense counsel argues that Heaney's speech was repetitive thereby justifying Roberts' actions. Defense counsel also points out that under the council's rules, a speaker is not guaranteed an entire five minute allotment to address the council, but only "no more than five (5) minutes." (Rec. Doc. 37-4, Roberts Exhibit 3 at 3). To the extent that Defendants characterize Heaney as being repetitive because other citizens had already spoken on a similar topic, this type of repetitiveness would hardly justify silencing Heaney. Roberts did indicate on the video that Heaney was addressing the council for the third time on the topic of campaign contributions from no-bid contractors. But the video does not support the contention that Roberts cut Heaney's speaking time because he was being repetitive by speaking for a third time. To the contrary, the video supports the inference that notwithstanding the allegedly repetitive nature of the address, Roberts originally had intended to give Heaney the entire five minutes allowed under the rules. And there is no indication that Heaney or any other speaker had addressed the council about legal authority that was contrary to the parish attorney's opinion. Thus, while silencing a speaker based on repetitiveness can in some circumstances constitute a valid viewpoint-neutral restriction, defense counsel's argument based on repetitiveness is not a persuasive one in this case.

[8] Roberts did not submit an affidavit in support of his motion for summary judgment and the record contains no deposition testimony from him. The Court notes, however, that even with sworn statements from Roberts as to his intent the video would create an issue of fact precluding summary judgment.

(citing *Jones v. City of Jackson*, 203 F.3d 875, 879 (5th Cir. 2000)). A right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* (quoting *Wooley v. City of Baton Rouge*, 211 F.3d 913, 919 (5th Cir. 2000)). If the first step is met, *i.e.*, the official's conduct violates an established right, then the second step is to determine whether the defendant's conduct was objectively reasonable. *Id.* (citing *Jones*, 203 F.3d at 879). An official's conduct is ordinarily not objectively reasonable if it violates a clearly established right because "a reasonably competent public official should know the law governing his conduct." *Guillory v. Thomas*, 355 Fed. Appx. 837, 841 (5th Cir. 2009) (unpublished) (quoting *Harlow*, 457 U.S. at 818-19).

For the reasons that the Court has already explained, the first step in the qualified immunity analysis, *i.e.*, whether Heaney has established a violation of his First Amendment rights, presents an issue of fact as to subjective intent that cannot be resolved on summary judgment. The Court must therefore assume solely for purposes of the qualified immunity analysis that Roberts did in fact violate Heaney's First Amendment rights, *i.e.*, that Roberts' conduct was motivated by viewpoint discrimination. It is beyond cavil that a reasonable government official in Roberts' position would have known that it would be impermissible under the First Amendment to prevent Heaney from speaking and to eject him from the meeting based on the message that he was conveying. If Roberts' conduct was motivated by an improper constitutional motive then ejecting Heaney from the meeting would be objectively unreasonable and qualified immunity would be unavailable as a defense. The erroneous premise that pervades defense counsel's arguments in support of qualified immunity is the contention that the video evidence eliminates the possibility of improper motive and renders Roberts' actions objectively reasonable under the circumstances. To the contrary, as the Court has already explained, the video evidence merely presents a scenario

from which the trier of fact may or may not conclude that improper motive played a role in Roberts' actions. Roberts is not entitled to qualified immunity in light of the disputed issues of fact surrounding subjective intent.[9]

Heaney contends that Ronald Black is also liable for violating his First Amendment rights. The video demonstrates that Black only approached Heaney and removed him from the council chambers after Roberts instructed him to do so. Heaney takes issue with the suggestion that Black was merely following Roberts' orders, and that the First Amendment violation was already complete when Black approached Heaney at the lectern.[10] (Rec. Doc. 40, Heaney's Opposition at 11). Heaney also argues that no aspect of state law gave Black "the authority to act as a bouncer for Roberts." (Rec. Doc. 40, Heaney Opposition at 11).

The Court recognizes that in this circuit police officers who merely carry out the orders of their superiors are not entitled to qualified immunity on that basis alone. *See Cozzo v. Tangipahoa Par. Council*, 279 F.3d 273 (5th Cir. 2002). And in this case Roberts was not

---

[9] In *Crawford v. Britton*, 523 U.S. 574 (1998), the Supreme Court confronted the dicey issue of qualified immunity, which strives to turn solely on objective determinations, in the case of a constitutional tort such as First Amendment retaliation which requires proof of improper motive as an element of the plaintiff's claim. In that decision the majority declined to fashion a special rule that would protect a defendant's right to qualified immunity in cases involving improper motivation—cases that would frequently involve a disputed issue of fact that would preclude summary adjudication. *Id.* at 600-01.

[10] The suggestion that the First Amendment violation began and ended with Heaney's speech would be ignoring the fact that as a citizen Heaney had a First Amendment right to attend a public meeting. *See Laskowsi v. Snyder*, No. 05-502, 2007 WL 118535 (N.D. Ind. Jan. 10, 2007) (examining First Amendment implications of removing a citizen from a public meeting); *Timmon v. Wood*, No. 05-127, 633 F. Supp. 2d 453 (Apr. 21, 2008). Black tries to make much of the fact that Heaney never asked whether he could stay in the building or the council chambers, (Rec. Doc. 36-1, Black Memorandum at 4), but from the video it would appear that he never had the chance. The order to remove Heaney came without a prior warning and it was peremptory in nature. Heaney was not required to force the police to drag him out in order to evince a desire to stay at the meeting even if he could not continue to be heard. *See Laskowski*, 2007 WL 118535, at *3 n.2 (citing *Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965) (explaining that plaintiff's decision to leave on his own does not affect the First Amendment analysis where the defendant ordered him removed and in fact attempted to remove him).

even Black's superior on the police force. But members of the Gretna Police Department provide security at the council meetings, and judging from the video of the meeting, they fulfill the role of sergeant-at-arms for the meetings. This Court is persuaded that no officer in Black's position would have understood that acting in obedience to a presumptively valid request by the council chairman to remove a citizen following an argumentative exchange with a council member would violate that citizen's First Amendment rights. *See Collinson v. Gott*, 895 F. 2d 994, 1004-05 (4th Cir. 1990); *Osborne v. Lohr-Robinette*, No. 05-106, 2006 WL 3761597, at *6 (S.D. W. Va. Dec. 20, 2006). Again, while not conclusive one way or the other, the video does not foreclose the inference that Roberts validly silenced and removed Heaney from the meeting for reasons that had nothing to do with his message. Under the circumstances, Black was not required to cross-examine and second-guess Roberts regarding his First Amendment motives before acting. And the Court is not persuaded that Black could only act in response to Roberts' request to remove Heaney if Black had probable cause to arrest Heaney for a crime. If this proposition is true as a matter of law, then the Court is persuaded that the law was not clearly established as to this point. Ronald Black is entitled to qualified immunity on Heaney's First Amendment claim.

### B. Fourth Amendment

Heaney alleges that Black's actions constituted a seizure in violation of his Fourth Amendment rights. (Rec. Doc. 1, Complaint ¶ 12). Heaney alleges that Roberts is also liable for the Fourth Amendment violation because Black acted based upon Roberts' direct orders. (*Id.*).

Both Black and Roberts deny that Heaney was "seized" at all, and therefore argue that the Fourth Amendment was not implicated in this case. If the Fourth Amendment was implicated, Defendants argue that Black had probable cause to remove Heaney. Finally, even if Heaney's Fourth Amendment rights were technically violated, Defendants argue that they

are entitled to qualified immunity.

There are three types of encounters between police and individuals, each with different ramifications under the Fourth Amendment. *United States v. Cooper*, 43 F.3d 140, 145 (5th Cir. 1995) (citing *Florida v. Bostick*, 501 U.S. 429, 435 (1991)). The first is a consensual encounter, which is not a "seizure" and requires no objective level of suspicion. *Id.* The second type of encounter, based on *Terry v. Ohio*, 392 U.S. 1 (1968), involves a limited investigative stop. Prior to *Terry*, any restraint on the person amounting to a seizure for purposes of the Fourth Amendment was invalid unless justified by probable cause. *Id.* *Terry* created a limited exception to the general probable cause requirement: certain seizures are justifiable under the Fourth Amendment if there is articulable suspicion that a person has committed or is about to commit a crime. *Id.* The third type of police-citizen encounter is an arrest, which is plainly a Fourth Amendment "seizure" that must be based on probable cause to believe that the individual has committed a crime. *Id.* The characterization of a police-citizen encounter turns on the objective determination of whether a reasonable person would feel free "to disregard the police and go about his business." *California v. Hodari D.*, 499 U.S. 621, 628 (1991). The touchstone of the Fourth Amendment is "reasonableness" based on the totality of the circumstances. *See Freeman v. City of Dallas*, 242 F.3d 642, 649-50 & n.9 (5th Cir. 2001).

The Court is persuaded that Heaney's encounter with Black was a "seizure," as that term is defined in the context of the Fourth Amendment. Heaney testified at his deposition that he would have stayed at the meeting after Roberts silenced him had he been given the chance to do so. But Black approached Heaney at the lectern in order to remove him from the council chambers. The encounter was clearly not consensual, and a reasonable person in Heaney's position would not have believed that he was free to leave the encounter. In fact, it is undisputed that Heaney was not free to leave because he was detained briefly by Black

13

after they left the council chambers so that Black could consult with his supervisor to determine whether Heaney should be arrested for a crime. The video evidence confirms Heaney's testimony that Black used some force, even if minimal, to effect the removal, and Heaney has produced photographs of the bruises that he sustained in the encounter. Defendants' contention that no seizure occurred is belied by the undisputed facts.

It is not clear that Heaney's conduct would rise to the level of constituting probable cause to believe that he had committed a criminal offense, but the Court is not persuaded that this particular seizure had to be supported by probable cause pertaining to a crime. The exchange between Roberts and Heaney had become argumentative and Roberts, as chairman of the meeting, requested that Heaney be removed from the chambers. Roberts never implied that criminal activity was an issue. Because reasonableness for the Fourth Amendment claim is judged solely on objective factors, the Court is persuaded that for Fourth Amendment purposes it was permissible for Black to effect the removal per the chairman's order even in the absence of probable cause to believe that Heaney had broken the law. The seizure was brief, minimally intrusive, and reasonable under the totality of the circumstances.

Even if the seizure constituted a violation of Heaney's Fourth Amendment rights, the Court is persuaded that both Black and Roberts would be entitled to qualified immunity because even now (much less at the time of the incident) the law is not sufficiently clear that removing a citizen from a public meeting based on the chairman's judgment that the citizen was disrupting the meeting requires probable cause to believe that a crime has been committed. Summary judgment is GRANTED as to both Roberts and Black on the Fourth Amendment claim.

    **C.**    **Punitive Damages**

Roberts moves for summary judgment on the issue of punitive damages arguing that the evidence in the case cannot support such an award. The purpose of punitive damages is

to punish the defendant for his conduct and to deter him and others like him from similar behavior. *Edmonson v. County of Van Zandt*, 15 F.3d 180 (5th Cir 1994) (unpublished) (citing *Smith v. Wade*, 461 U.S. 30, 54 (1994)). Punitive damages may be awarded even in the absence of actual damages where there has been a constitutional violation.[11] *Id.* (quoting *La. ACORN Fair Housing v. LeBlanc*, 211 F.3d 298, 303 (5th Cir. 2000)). But punitive damages may be awarded only where the defendant's conduct is "motivated by evil intent" or demonstrates "reckless or callous indifference" to a person's constitutional rights. *Id.* (quoting *Sockwell v. Phelps*, 20 F.3d 187, 192 (5th Cir. 1994)). The latter standard requires "recklessness in its subjective form, *i.e.*, a subjective consciousness of a risk of injury or illegality and a criminal indifference to civil obligations." *Id.* (quoting *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536 (1999)).

The Court is persuaded that while the evidence could allow a reasonable jury to infer the necessary subjective intent to support a First Amendment violation, it will not permit a reasonable jury to infer the level of "evil intent" or recklessness necessary to support a claim for punitive damages. The motion for summary judgment is therefore GRANTED as to punitive damages.

### D. State Law Claims: False Arrest, Battery, Negligence

***False Arrest.*** Wrongful arrest, or the tort of false imprisonment, occurs when one arrests and restrains another against his will and without statutory authority. *Miller v. Desoto Regional Health Sys.*, 128 So. 3d 649, 655-56 (la. App. 3d Cir. 2013) (citing *Kyle v.*

---

[11] No party raised this issue but it appears that all of the compensable injuries in this case, if any, resulted from the incident between Black and Heaney, which did not involve Roberts. Given that under federal law Roberts is only liable for his own conduct, the Court suspects that a nominal damages instruction will be appropriate vis à vis the First Amendment claim against Roberts if this case is ultimately tried to a jury. The law is well-established in this circuit that a plaintiff may recover nominal damages when his constitutional right have been violated but he is unable to prove actual injury. *Williams v. Kaufman County*, 352 F.3d 994, 1014 (5th Cir. 2003) (citing *LeBlanc*, 211 F.3d at 302).

*City of New Orleans*, 353 So. 2d 969 (La. 1977)). The tort has two essential elements: 1) detention of the person; and 2) the unlawfulness of the detention. *Id.* (quoting *Kennedy v. Sheriff of E. Baton Rouge*, 935 So. 2d 669, 690 (La. 2006)).

In this case Heaney was not formally arrested and the only detention that occurred as part of the removal took place after Black removed Heaney from the council chambers when Black was conferring with his supervisor to determine whether Heaney should be placed under arrest for a criminal violation or released. Under state law, probable cause was not required to conduct such a brief and reasonable detention. *See* La. Code Crim. Proc. 213. The motion for summary judgment is GRANTED as to both Defendants on this claim.

***Battery/Negligence.*** It is undisputed that Black made physical contact with Heaney in order to remove him from the council chambers and the building elevators. It is also undisputed that Heaney went to the ground as he was leaving the council chambers—whether the fall resulted from tripping on his own or from a shove by Black is a fact in dispute. Heaney contends that after he went down Black fell on top of him. (Rec. Doc. 40-1, Exhibit 1 Heaney Decl.). Heaney's claim in this lawsuit is that he suffered serious physical injuries as a result of being pushed to the floor and having Black land on top of him. (Rec. Doc. 1, Comp. ¶ 11). The Court agrees with Heaney's assertion that the jury must determine whether Black was at fault for injuring Heaney. The motion for summary judgment is therefore DENIED as to Black and the City of Gretna (respondeat superior) on the state law battery and negligence causes of action. The motion is GRANTED as to Roberts and Jefferson Parish on those state law claims because Roberts was not personally involved in the physical altercation.

### III. CONCLUSION

Summary judgment is DENIED as to the First Amendment claim against Roberts in his individual capacity. Because the free speech claim under the state constitution remains

pending, *see* note 2, *supra*, the Parish of Jefferson will remain in the lawsuit under the state law theory of respondeat superior as the employer of Roberts.[12]

Summary judgment is DENIED as to the state law battery/negligence claims against Black. The City of Gretna will remain in the lawsuit under the state law theory of respondeat superior as the employer of Black.

Summary judgment is GRANTED as to Black on the First Amendment claim, GRANTED as to Roberts on the state law battery/negligence claims, and GRANTED as to both Black and Roberts on the Fourth Amendment and state law false arrest claims, and on the claim for punitive damages.

Finally, the parties should not construe this ruling as suggesting that the Court believes that Roberts acted with an improper or unconstitutional motive during the council meeting, or that proving such a contention will be an easy burden. The Court's ruling only recognizes that this Court's own opinion regarding the events of September 18, 2013 is not relevant to the legal issues before the Court, and that under the well established First Amendment jurisprudence that this Court must follow, the question of motive must be left for the jury.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 37)** filed by defendants Christopher L. Roberts and the Parish of Jefferson, and the **Motion for Summary Judgment (Rec. Doc. 36)** filed by defendants Ronald Black and the City of Gretna are **GRANTED IN PART AND DENIED IN PART** as explained above. If Roberts does not seek interlocutory review of the qualified immunity determination, the Court will

---

[12] Roberts mentions discretionary immunity under La. R.S. § 9:2798.1(B) but it is not clear to the Court which claims Roberts believes that immunity would apply to. (Rec. Doc. 37-1, Roberts' Memorandum at 23). State law immunities have no effect on the federal cause of action and the state law tort claims have now been dismissed as to Roberts.

17

schedule a status conference in January for the purpose of selecting a trial date.

December 1, 2015

$\phantom{xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx}$_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE